No. 25-1085

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

DMARCIAN, INC.,
*Plaintiff – Appellee,*

v.

PRESSLY MCCAULEY MILLEN,
*Party-in-Interest – Appellant*

and

DMARC ADVISOR BV, f/k/a Dmarcian Europe BV,
*Defendant.*

_____

On Appeal from the United States District Court for the
Western District of North Carolina, No. 1:21-cv-00067-MR

_____

**<u>PRESSLY M. MILLEN'S OPPOSITION TO MOTION TO DISMISS</u>**

Appellant Pressly M. Millen files this response in opposition to

Plaintiff-Appellee dmarcian, Inc.'s ("dmarcian") Motion to Dismiss, ECF

No. 13.

**INTRODUCTION**

Mr. Millen, a nonparty lawyer for party DMARC Advisor, timely

appealed the district court's order holding him in contempt and

1

suspending Mr. Millen's admission to the Western District of North Carolina during the pendency of the underlying action as punishment for the contempt.[1] Dmarcian now moves to dismiss Mr. Millen's appeal for lack of appellate jurisdiction. The Court should deny that motion. Mr. Millen is not a party to the underlying proceedings, and the "right of a nonparty to appeal an adjudication of contempt cannot be questioned . . . notwithstanding the absence of a final judgment in the underlying action." *U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 76 (1988). Further, the district court did not hold Mr. Millen jointly and severely liable for the sanction with his client, DMARC Advisor. Therefore, the limited exception to the rule that a nonparty may not appeal when a sanction is issued jointly and severally with a lawyer and its party client that this Court set forth in *In re Bestwall, LLC,* 99 F.4th 679, 684 (4th Cir. 2024), does not apply. Mr. Millen may immediately appeal the district court's order holding him in contempt.

---

[1] The district court also ordered that the suspension would be lifted if Mr. Millen filed an affidavit in Dutch court adopting the district court's perspective on the primacy of the U.S. case over the Dutch case.

# BACKGROUND

The underlying litigation arises from a "broken business relationship" between dmarcian, "a Delaware corporation with headquarters in North Carolina," and DMARC Advisor, "a Dutch entity based in the Netherlands." *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 128 (4th Cir. 2023).

In February 2021, the Court of Rotterdam granted DMARC Advisor's request for a provisional remedy requiring dmarcian to restore DMARC Advisor's access to shared computer systems. *See* W.D.N.C. ECF No. 39 at 11.

In March 2021, dmarcian sued DMARC Advisor in the Western District of North Carolina, alleging (among other things) copyright and trademark infringement. *See* W.D.N.C. ECF No. 39 at 11. Mr. Millen and his partner entered notices of appearance for DMARC Advisor.

In October 2021, DMARC Advisor commenced an action on the merits against dmarcian in the Court of Rotterdam. Dmarcian sought to stay that action in favor of the North Carolina action. As part of that effort, dmarcian filed in the Netherlands an affidavit by one of its U.S. litigation counsel. The final two paragraphs of that affidavit provide

counsel's opinion about the scope of the trademark and copyright claims that dmarcian filed in the United States:

> 21. It is . . . my opinion that a determination made in the Dutch Courts as to the respective trademark rights of parties are "irrelevant and inadmissible" in United States court hearing Lanham Act claims. *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956).
>
> 22. As to the copyright claim, the United States District Court found that the copyright at issue is a United States Copyright and that US law can apply even where the infringement takes place abroad. (5/26/21 Injunction, p. 38, n.15). The Court further found that US law applies because the law of the licensor applies. *Id.*

Affidavit of Pamela S. Duffy ¶¶ 21–22, attached as Exhibit A, at "Productie 1".[2]

The next month, DMARC Advisor filed in the Court of Rotterdam an affidavit from Mr. Millen presenting his view that "those statements are confused regarding the law; at worst, both are wrong":

> 16. As a general matter, U.S. courts recognize that "[i]ntellectual property" involves "separate and independent rights arising from the unique laws of each nation." *Black & Decker Corp. v. Sanyei America Corp.*, 650 F. Supp. 406, 409 (N.D.Ill. 1986) (discussing copyright and trademark laws).

---

[2] This Court may take judicial notice of this affidavit because dmarcian filed it with the Dutch court. The "most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." *United States v. Fowler*, 58 F.4th 142, 152 (4th Cir. 2023) (quoting *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989)).

> Neither U.S. copyright law nor U.S. trademark law applies extraterritorially. *See GB Mktg. USA Inc. v. Gerolsteiner Brunnen*, 782 F. Supp. 763, 772 (W.D.N.Y. 1991) ("Where copyright infringement occurs both inside and outside the United States, the [U.S.] district court has jurisdiction, but only over the U.S. infringement."). For that reason, the North Carolina litigation, which pleads only violations of *U.S.* copyright and trademark law, is "incapable of resolving infringement under foreign law," *e.g.*, Dutch law. *Zynga, Inc. v. Vostu USA, Inc.*, 816 F. Supp. 2d 824, 829 (N.D. Cal. 2011) (U.S. court refusing to enjoin Brazilian copyright action).
>
> 17. For these reasons (and notwithstanding the fact that the North Carolina Litigation is currently on appeal challenging both jurisdiction and failure of the court to apply the doctrine of *forum non conveniens* in order to dismiss the case), determinations to be made by the U.S. court in the North Carolina Litigation do not concern the same subject matter as the subject matter before the Dutch court. In other words, the primary subject matter of the North Carolina Litigation is alleged infringement of the intellectual property within the U.S. while the subject matter of the Dutch proceedings is related to the relationship between the parties with respect to their distribution agreement, co-ownership of the software code, and the determination of the penalties previously imposed.

W.D.N.C. ECF No. 186-1 at 5–6. One of DMARC Advisor's Dutch counsel, Alfred Meijboom, also argued to the Court of Rotterdam that, as a matter of Dutch procedural law, the Dutch proceedings began first. *See* W.D.N.C. ECF No. 173-1 at 7 ("Therefore, it cannot be said that, translated to Dutch proportions, [dmarcian] in the United States on March 12, 2021, a case on the merits has begun.").

The Court of Rotterdam denied dmarcian's motion to stay those proceedings. Dmarcian then turned to the U.S. district court, arguing that DMARC Advisor had misled the Dutch court about the status of the U.S. proceedings. *See* W.D.N.C. ECF No. 185.

In June 2023, the district court granted dmarcian's request in part. It ordered that "DMARC Advisor BV shall file copies of this Order and a statement from DMARC Advisor's counsel to the Rotterdam District Court." W.D.N.C. ECF No. 216 at 25. The required statement had four parts, all of which were found in the body of the June 2023 Order:

(1) Counsel is submitting this statement to the Rotterdam Court in order to correct false and misleading representations previously made to the Court in both the Affidavit of Pressly Millen and the pleading notes of Alfred Meijboom;

(2) The proceedings on the merits in the U.S. case began with the filing of the Complaint on March 12, 2021, and DMARC Advisor's representations to the contrary to the Rotterdam Court are entirely untrue;

(3) The U.S. case filed on March 12, 2021 presented claims which put copyright ownership and the terms of the parties' contracts squarely at issue. As such, there appears to be some overlap of issues between the U.S. case and that pending before the Rotterdam Court. DMARC Advisor's representation to the Rotterdam Court that the U.S. case pleads only violations of U.S. copyright and

trademark law, and not any infringing actions outside the U.S., is entirely untrue; and

(4) The Preliminary Injunction issued by the U.S. Court did not limit application of the Copyright Act to only acts of infringement within the United States and gave extraterritorial application to reach acts of DMARC Advisor in Europe and elsewhere, and DMARC Advisor's representations to the contrary to the Rotterdam Court are entirely untrue.

*Id.* at 23–24. DMARC Advisor's Dutch counsel filed the June 2023 Order, including the four statements, in the Court of Rotterdam. *See* W.D.N.C. ECF No. 217.[3] DMARC Advisor also filed a notice of appeal to this Court. That appeal remains pending (No. 23-1790).

Meanwhile, dmarcian moved in the district court for an order holding DMARC Advisor and Mr. Meijboom in contempt. Dmarcian

---

[3] Those statements are questionable. Dmarcian filed its U.S. complaint over a month after a Dutch court had entered an injunction covering the same subject matter. In June 2023, the Supreme Court repeated its "longstanding admonition that 'United States law governs domestically but does not rule the world.'" *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 428 (2023) (quoting *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007)). And U.S. intellectual property law is generally "considered to have no extraterritorial reach." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 306 (4th Cir. 2012) (copyright). Still, DMARC Advisor filed the statements in Dutch court. But that filing did not satisfy the district court, which had directed DMARC Advisor to file those statements not only on its own behalf but also on behalf of its counsel.

argued that DMARC Advisor "complied with the order to submit the June 27, 2023 Order to the Dutch Court, but [DMARC Advisor] and its counsel willfully failed and refused to submit the required statements and thereby are in direct violation of that Order."  W.D.N.C. ECF No. 253 at 2.

DMARC Advisor argued in response that it complied with the letter and spirit of the June 2023 Order by submitting the disputed statements through Dutch counsel.  *See* W.D.N.C. ECF No. 262 at 6–10.  DMARC Advisor also argued, relying on a declaration from a former board member of the Dutch Bar Association, *see* W.D.N.C. ECF No. 261, that if "the Order required more—a separate, duplicative statement by DMARC Advisor's counsel—then DMARC Advisor (and its U.S. counsel) could not comply with that directive," W.D.N.C. ECF No. 262 at 10.  The June 2023 Order would have "exceeded the limit of what is legally permissible in a Dutch proceeding if it indirectly required DMARC Advisor's counsel to file an additional statement to the Rotterdam Court containing the four listed paragraphs." *Id*. at 10 (quoting W.D.N.C. ECF No. 261 at 7).

In December 2024, the district court held DMARC Advisor and Mr. Millen in civil contempt for violating the June 2023 Order.  *See* W.D.N.C.

ECF No. 401. The district court ordered DMARC Advisor to pay dmarcian $400,000, but it held that making Mr. Millen "jointly and severally liable for that monetary sanction would not be warranted." *Id.* at 27. Instead, the district court suspended Mr. Millen's admission to the Western District of North Carolina bar during the underlying action. *See id.* at 28. The district court further ordered that Mr. Millen could "purge his contempt by certifying under oath  and demonstrating to the satisfaction of the Court that he has had filed with the Dutch Court an affidavit, under oath, correcting the misstatements and omissions of his prior affidavit, as well as the misstatements and omissions made by Mr. Meijboom, and apologizing to the Dutch Court for such failures." *Id.* Mr. Millen (and DMARC Advisor) timely appealed. *See* W.D.N.C. ECF Nos. 405, 407.

## ARGUMENT

The "right of a nonparty to appeal an adjudication of contempt cannot be questioned . . . notwithstanding the absence of a final judgment in the underlying action." *U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 76 (1988). "Final contempt adjudications, imposing sanctions, are deemed appealable as final decisions in all situations other

than that of civil contempt against a party to a pending proceeding." 15B Edward H. Cooper, *Federal Practice and Procedure* § 3917 (2d ed. 2024); *see also U.S. Cath. Conf.*, 487 U.S. at 76; *In re Under Seal*, 749 F.3d 276, 284–85 (4th Cir. 2014). The district court held Mr. Millen, a nonparty to the proceedings below, in civil contempt and imposed a sanction. This Court thus has jurisdiction over Mr. Millen's appeal.

Relying on *In re Bestwall, LLC*, 99 F.4th 679, 684 (4th Cir. 2024), dmarcian argues that a party's lawyer cannot pursue an immediate appeal when "sanctions are issued jointly to client and counsel." Mot. Dismiss at 11. But this argument does not fit the facts; the district court imposed no sanction jointly on DMARC Advisor and Mr. Millen. In fact, the district court considered, and expressly declined, to hold Mr. Millen jointly and severally liable for the monetary sanction it issued against DMARC Advisor. *See* W.D.N.C. ECF No. 401 at 27-28.

In *Bestwall*, this Court held that a civil contempt order was not immediately appealable when "parties to the ongoing litigation are held jointly and severally liable with their counsel for contempt sanctions." 99 F.4th at 684 n.1. But the majority had no quarrel with the dissent's observation that "contempt sanctions solely against a nonparty *are*

immediately appealable." *Id.* (majority opinion) (emphasis added); *see also id.* at 689 (King, J., dissenting) ("As recognized by the Supreme Court, and by our Court as well, a nonparty is generally entitled to appeal a final contempt order, before the conclusion of related litigation."). Here, the district court did not hold DMARC Advisor and Mr. Millen jointly and severally responsible for the contempt sanction it entered against Mr. Millen. *See* W.D.N.C. ECF No. 401 at 27-28. Therefore, *Bestwall* does not apply and the ordinary rule that a final contempt adjudication against a nonparty is immediately appealable as final decision controls.

Dmarcian also equates the December 2024 Order with ordinary attorney disqualification decisions, *see* Mot. Dismiss at 11–12, but that Order is not a typical disqualification based on conflict of interest or other ethical concern arising during litigation. The Order holds Mr. Millen in civil contempt. And it imposes a suspension sanction that prevents Mr. Millen from representing *any* client in the Western District of North Carolina while the district court action is pending. That final contempt sanction against a nonparty is immediately appealable. *See U.S. Cath. Conf.*, 487 U.S. at 76; *In re Under Seal*, 749 F.3d at 284–85.

Dmarcian's jurisdictional arguments mirror those advanced by the appellee in *Trade Well Int'l v. United Cent. Bank*, 778 F.3d 620 (7th Cir. 2015). There, the district court held a party's counsel "in contempt of court, revoked his *pro hac vice* status, barred him from practicing in the Western District of Wisconsin for three years, and imposed a $500 fine." *Id.* at 621. The appellee then argued that the court of appeals lacked jurisdiction "because the contempt orders were not final and appealable at the time [the lawyer] filed his notice of appeal." *Id.* at 625. The court of appeals wrote that it could "dispose of the jurisdictional argument quickly": "An adjudication of contempt is immediately appealable by a nonparty such as [the lawyer]." *Id.* (citing *United States v. Dowell*, 257 F.3d 694, 698 (7th Cir. 2001) & *United States v. Myers*, 593 F.3d 338, 344 & n.9 (4th Cir. 2010)). This Court should deny dmarcian's Motion to Dismiss with similar brevity.[4]

## CONCLUSION

The Court should deny the Motion to Dismiss.

---

[4] While this Court has jurisdiction on additional grounds, *see* ECF No. 11 (docketing statement), this Court need not reach those other grounds because its power to review contempt sanctions entered against a nonparty "cannot be questioned." *U.S. Cath. Conf.*, 487 U.S. at 76.

Dated: April 3, 2025       Respectfully submitted,

**ALLEN, CHESSON & GRIMES PLLC**

 /s/ David Allen
David N. Allen (NC Bar No. 9095)
505 N. Church Street
Charlotte, North Carolina 28202
(704) 755-6010
dallen@allenchesson.com

*Counsel for Appellant Pressly M. Millen*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,606 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook.

Dated: April 3, 2025

/s/ David Allen
David N. Allen

*Counsel for Appellant Pressly M. Millen*

# Exhibit A



## INCIDENTELE CONCLUSIE HOUDENDE EXCEPTIES VAN ONBEVOEGDHEID EN NIET-ONTVANKELIJKHEID, TEVENS HOUDENDE EEN SUBSIDIAIR VERZOEK TOT AANHOUDING

inzake

de rechtspersoon naar buitenlands recht **DMARCIAN, INC.**, gevestigd en kantoorhoudende te Brevard, North-Carolina aan de 43 S. Broad Street, Suite 203 (NC 28712), de Verenigde Staten van Amerika,

*gedaagde in de hoofdzaak en eiseres in het incident,*

advocaten: mrs. T.S. Jansen en M.C. Hoeba

tegen

de besloten vennootschap **DMARC ADVISOR B.V.**, statutair gevestigd en kantoorhoudende te Dordrecht aan de Burgermeester de Raadtsingel 93 (3311 JG),

*eiseres in de hoofdzaak en gedaagde in het incident*

advocaten: mrs. A.P. Meijboom en V. van Druenen



**INHOUDSOPGAVE**

1   INLEIDING ................................................................................. 3

2   EXCEPTIES VAN ONBEVOEGDHEID ............................................. 4

    A   DE HULPREGEL IS NIET VAN TOEPASSING ............................... 4

    B   VERBINTENISSEN UIT OVEREENKOMST .................................... 5

    C   ART. 7 RV CREËERT OOK GEEN RECHTSMACHT ......................... 7

3   DBV IS NIET-ONTVANKELIJK BIJ GEBREK AAN BELANG ................. 9

    A   DBV DIENT EEN NIEUWE ZAAK AANHANGIG TE MAKEN IN DE VS ............... 9

    B   DE RECOGNITION ACT IS NIET VAN TOEPASSING .................... 10

4   DE RECHTBANK DIENT ZAAK AAN TE HOUDEN .......................... 11

    A   AANHOUDING VEREIST GELET OP LITISPENDENTIE ................. 12

    B   AANHOUDING VEREIST GELET OP CONNEXITEIT ..................... 14

MET CONCLUSIE ........................................................................... 15



# 1    INLEIDING

1.1    Gedaagde dmarcian, Inc. (**dmarcian**) heeft kennisgenomen van de inleidende dagvaarding van eiseres, DMARC Advisor B.V. (voorheen genaamd dmarcian Europe B.V., **dBV**), van 11 oktober 2021 (**Dagvaarding**).

1.2    Voordat dmarcian in de hoofdzaak antwoordt werpt zij, vóór alle weren (vgl. art. 11 Rv), dit incident op. dmarcian behoudt zich alle weren ten principale voor en betwist al het bij Dagvaarding door dBV gestelde, behoudens hierna uitdrukkelijk erkende stellingen.

1.3    Het geschil in de hoofdzaak heeft een internationaal karakter, nu dmarcian gevestigd is in de Verenigde Staten van Amerika (**VS**). In dit geval is er geen internationale regelgeving van toepassing op de vraag of de Nederlandse rechter in deze zaak rechtsmacht toekomt, zodat het commune Nederlandse internationaal bevoegdheidsrecht van toepassing is.

1.4    Ten aanzien van dmarcian baseert dBV de bevoegdheid van de Nederlandse rechter op art. 6 sub a Rv in combinatie met art. 6a sub b Rv. Daartoe stelt dBV dat een deel van haar vorderingen zijn gegrond op een verbintenis uit overeenkomst. dBV meent dat de verbintenis die aan de eis ten grondslag ligt de tussen partijen gesloten overeenkomst is, die zou kwalificeren als een exclusieve distributieovereenkomst (vgl. § 8.2 Dagvaarding).

1.5    Volgens dBV moet die overeenkomst worden aangemerkt als strekkende tot het verrichten van diensten in de zin van art. 6a sub b Rv (vgl. § 8.3 Dagvaarding). Nu dBV primair actief is op de Europese markt en haar diensten vanuit Dordrecht verstrekt, zou Nederland de plaats zijn waar de diensten zouden worden verricht en zou de Nederlandse rechter bevoegd zijn, aldus dBV.

1.6    In het licht van **Onderdeel 2** hierna, geeft de redenering van dBV blijk van een onjuiste toepassing van art. 6a sub b Rv en art. 6 sub a Rv. Bovendien concludeert dmarcian dat er geen zelfstandige bevoegdheidsgrond ten aanzien van medegedaagde Timothy George Draegen (**Draegen**) bestaat, zodat art. 7 Rv ook geen bevoegdheid creëert ten aanzien van dmarcian. dBV heeft overigens geen zelfstandige bevoegdheidsgrond aangevoerd voor haar vorderingen sub 3a en sub 3b tot betaling van vermeend verbeurde dwangsommen. Dat verbaast niet omdat ook dmarcian daarvoor in de eerste titel (en eerste afdeling) van Rv geen grondslag ziet. Derhalve concludeert dmarcian, vóórdat zij in de hoofdzaak antwoordt, tot onbevoegdheid van de Nederlandse rechter, om hierna kennis te nemen van alle in het petitum op dmarcian gepretendeerde vorderingen.

1.7    Indien uw rechtbank zich onverhoopt bevoegd acht, kan dBV vanwege de in **Onderdeel 3** uiteengezette omstandigheden niet in haar vorderingen worden ontvangen, althans zou deze procedure moeten worden aangehouden (**Onderdeel 4**).



## 2    EXCEPTIES VAN ONBEVOEGDHEID

2.1    Op grond van art. 2 Rv geldt dat de Nederlandse rechter rechtsmacht heeft als gedaagde in Nederland zijn woonplaats of gewone verblijfplaats heeft. Dit is evident niet het geval. Daardoor kan de Nederlandse rechter in casu alleen bevoegdheid aannemen vanwege één van de aanvullende bevoegdheidsgronden uit het commune Nederlandse internationaal bevoegdheidsrecht.

2.2    In de hiernavolgende paragrafen zet dmarcian uiteen dat de Nederlandse rechter, anders dan dBV beweert, geen bevoegdheid toekomt op basis van art. 6a Rv, art. 6 Rv, en art. 7 Rv.

### A    DE HULPREGEL IS NIET VAN TOEPASSING

2.3    Met betrekking tot de onder art. 6 sub a Rv vereiste vaststelling van de plaats waar de verbintenis die aan de eis ten grondslag ligt moet worden uitgevoerd, fungeert art. 6a Rv als zogenaamde 'hulpregel' voor zover de litigieuze overeenkomst betrekking heeft op het verrichten van diensten (of koop, maar dat doet zich hier niet voor).

2.4    Laatstgenoemd artikel bepaalt dat de plaats van uitvoering in Nederland is gelegen, indien de diensten volgens de overeenkomst in Nederland verstrekt werden of verstrekt hadden moeten worden.

2.5    dBV doet ten onrechte een beroep op deze hulpregel (vgl. § 8.3 Dagvaarding). dBV's activiteiten onder de overeenkomst tussen dmarcian en dBV kunnen namelijk niet als *dienst* in de zin van art. 6a sub b Rv worden aangemerkt.

2.6    Volgens rechtspraak van het HvJ houdt dit begrip ten minste in dat de partij die de dienst verschaft (dBV) tegen *vergoeding* een bepaalde activiteit verricht (vgl. HvJ EU 23 april 2009, C-533/07, ECLI:EU:C:2009:257 (*Falco Privatstiftung c.s./Weller-Lindhorst*), r.o. 29).[1] dmarcian heeft dBV geen geldelijke vergoeding betaald voor haar "*diensten*".

2.7    Daar komt bij dat, los van de vraag of de activiteiten van dBV kwalificeren als dienst (waarvoor dmarcian geen geldelijke vergoeding heeft betaald), niet aan de overige vereisten uit art. 6a sub b is voldaan.

2.8    Art. 6a sub b Rv vereist immers dat "*de diensten volgens de overeenkomst in Nederland verstrekt werden of verstrekt hadden moeten worden*" (ond. adv.).

2.9    Nu de plaats van uitvoering van de "*diensten*" niet in de overeenkomst is vastgelegd (vgl. § 8.4 Dagvaarding) is dit artikel überhaupt niet van toepassing (vgl. Rb. Limburg 17 december 2014, ECLI:NL:RBLIM:2014:11203, r.o. 4.7 – 4.8 en Rb. Rotterdam 25 juli 2018, ECLI:NL:RBROT:2018:6027, r.o. 4.6.6 – 4.7).

---

[1]    Vgl. *Kamerstukken II* 1999/2000, 26 855, nr. 3, p. 33, 36, en nr. 5, p. 18.



2.10 Ook beroept dBV zich in § 8.2 en § 8.3 Dagvaarding ten onrechte op de in voetnoot 93 opgesomde rechtspraak van het HvJ. Anders dan de daarin berechte verkoopconcessie voor Whisky op het Belgische grondgebied,[2] en overeenkomst strekkende tot promotie en distributie van 'Barbecook' keukenapparatuur,[3] kan de rechtsverhouding tussen dmarcian en dBV niet worden aangemerkt als een distributieovereenkomst waarop art. 6a sub b Rv (vgl. art. 7 lid 1 sub b EEX II-Vo) van toepassing is.

2.11 De rechtsverhouding in casu heeft het karakter van een samenwerking *sui generis*, waarbij dmarcian en dBV min of meer (dmarcian zal in haar antwoord ten principale nader specificeren hoe zij de samenwerking ziet) de in § 4.18 e.v. Dagvaarding weergegeven taakverdeling hadden.

2.12 Deze taakverdeling kan bezwaarlijk als een distributieovereenkomst in de zin van genoemde rechtspraak van het HvJ worden aangemerkt. De Ondernemingskamer constateerde ook *prima facie* een samenwerking en geen distributierelatie (vgl. § 3.14 Dagvaarding):

> "(…) dat dit geschil ontwrichtend is voor de onderneming van dmarcian Europe; het ontwikkelen en verkopen van software is haar core business en de samenwerking met dmarcian, Inc. is daarvoor een noodzakelijke voorwaarde. Desondanks is deze samenwerking noch in het algemeen, noch ter zake van de intellectuele eigendomsrechten op ontwikkelde en te ontwikkelen (software)applicaties en (de reikwijdte van) de in verband daarmee verleende/te verlenen licenties in het bijzonder, door partijen voldoende geregeld. Hierover zijn geen eenduidig vastgelegde afspraken voorhanden, met als gevolg dat de samenwerking op het spel is komen te staan door de huidige discussie daarover, hetgeen een serieuze belemmering vormt voor de bedrijfsvoering van dmarcian Europe (…)"[4]

2.13 Derhalve moet worden teruggegrepen op art. 6 sub a Rv (vgl. Rb. Limburg 17 december 2014, ECLI:NL:RBLIM:2014:11203, r.o. 4.7 – 4.8).

**B     VERBINTENISSEN UIT OVEREENKOMST**

2.14 Zoals uit de in § 8.2 t/m 8.4 Dagvaarding weergegeven uiteenzetting blijkt, miskent dBV dat art. 6 sub a Rv rechtsmacht creëert in zaken betreffende *verbintenissen* uit overeenkomst indien die verbintenis aan de eis ten grondslag ligt, in Nederland is uitgevoerd of moet worden uitgevoerd. De stelling van dBV dat de verbintenis die aan haar eis ten grondslag ligt *"de tussen partijen gesloten Overeenkomst"* is, is derhalve onjuist.

2.15 Gelet op het feit dat art. 6 sub a Rv een uitzondering vormt op de hoofdregel 'woonplaats gedaagde', moet deze bepaling restrictief worden uitgelegd.[5] Niet de tussen partijen gesloten overeenkomst als zodanig heeft te gelden als *verbintenis die aan de eis ten*

---

[2]  HvJ EU 19 december 2013, C-9/12, ECLI:EU:C:2013:860 (*Corman-Collins*).
[3]  HvJ EU 8 maart 2018, C-64/17, ECLI:EU:C:2018:173 (*Saey Home & Garden*).
[4]  Hof Amsterdam (OK) 7 september 2020, ECLI:NL:GHAMS:2020:2536, r.o. 3.4.
[5]  HvJ EU 23 april 2009, C-533/07, ECLI:EU:C:2009:257 (*Falco Privatstiftung c.s./Weller-Lindhorst*), r.o. 37; Rb. 's Hertogenbosch 13 oktober 2010, ECLI:NL:RBSHE:2010:BO1296, r.o. 5.3.



*grondslag ligt* maar de specifieke verbintenis uit overeenkomst die aan de specifieke vordering ten grondslag ligt.

2.16 Nu art. 6a sub b Rv toepassing mist (vgl. § 2.5 – § 2.12), dient de plaats van uitvoering van de verbintenissen niet te worden bepaald door de locatie van waaruit dBV haar commerciële activiteiten richting haar afnemers verricht. dBV's stelling dat, nu zij actief is op de Europese markt en haar activiteiten vanuit Dordrecht verstrekt, Nederland de plaats is waar de litigieuze verbintenissen worden of moeten worden uitgevoerd (vgl. § 8.4 Dagvaarding), gaat derhalve niet op.

2.17 Onder art. 6 sub a Rv gaat het steeds om de plaats waar de litigieuze contractuele verbintenissen die dBV aan haar vorderingen ten grondslag heeft gelegd door dmarcian zijn uitgevoerd of hadden moeten worden uitgevoerd. Wanneer aanspraak wordt gemaakt op contractuele schadevergoeding is de in art. 6 sub a Rv bedoelde verbintenis steeds die, welke voortvloeit uit de overeenkomst en waarvan niet-nakoming wordt aangevoerd ter rechtvaardiging van de vordering.[6]

2.18 In het onderhavige geval heeft dBV meerdere vorderingen ingesteld tegen dmarcian. De vorderingen sub 1, 2 en 3 uit het petitum van de Dagvaarding betreffen stuk voor stuk verklaringen voor recht. De aard van deze vorderingen brengt met zich dat daaruit geen verbintenissen zijn te destilleren.

2.19 Oftewel, deze vorderingen strekken niet tot het uitvoeren van verbintenissen die uit de overeenkomst tussen dmarcian en dBV voortvloeien en kunnen dus geen rechtsmacht creëren (vgl. Rb. Amsterdam 9 april 2014, ECLI:NL:RBAMS:2014:1902, r.o. 5.3, waarin de rechtbank overwoog: *"primair vordert [eiser] een verklaring voor recht dat de notariële akten (…) nietig zijn. De primaire vordering betreft niet een verbintenis uit overeenkomst die is uitgevoerd of moet worden uitgevoerd."*).

2.20 De aard van deze vorderingen daargelaten beroept dmarcian zich erop – ook voor wat betreft de overige vorderingen uit het petitum van de Dagvaarding – dat de daaraan ten grondslag liggende verbintenissen niet in Nederland zijn uitgevoerd of moeten worden uitgevoerd.

2.21 dBV heeft dertien vorderingen ingesteld waaraan verschillende verbintenissen ten grondslag liggen die voortvloeien uit de rechtsverhouding tussen dmarcian en dBV. In een situatie als de onderhavige, waarin op basis een eenzelfde overeenkomst meerdere vorderingen worden ingesteld en waaruit verschillende verbintenissen kunnen voortvloeien, is het arrest *Shevanai/Kreischer* (HvJ EU 15 januari 1987, C-266/85, ECLI:EU:C:1987:11, r.o. 19) richtinggevend. Uit dit arrest volgt dat er bij pluraliteit van verbintenissen uit eenzelfde overeenkomst van mag worden uitgegaan dat de voornaamste van de in geschil zijnde verbintenissen forumbepalend is.[7]

---

[6] HvJ EU 6 oktober 1976, C-14/76, ECLI:EU:C:1976:134, *NJ* 1977/170 m.nt. J.C. Schultsz (*De Bloos/Bouyer*), § 3/r.o. 14).
[7] Vgl. ook Hof Arnhem-Leeuwarden 13 maart 2018, ECLI:NL:GHARL:2018:2698, r.o. 2.3.



2.22 Kritische lezing van het petitum van de Dagvaarding leert dat alleen vorderingen sub 1, 4 en 5 zogenaamde 'art. 6 sub a Rv situaties' zijn. Slechts aan deze vorderingen – en dan nog bij een erg ruime lezing daarvan – lijken verbintenissen ten grondslag te liggen. De voornaamste verbintenis die uit de eisen van dBV kan worden afgeleid strekt tot nakoming van de overeenkomst door dmarcian.

2.23 Aldus moet de plaats waar de verbintenissen van dmarcian die aan dBV's eis, strekkende tot nakoming van de overeenkomst, zijn uitgevoerd of zouden moeten worden uitgevoerd, worden vastgesteld.

2.24 Allereerst geldt dat dmarcian, als rechthebbende op de dmarcian software, het gebruik daarvan aan dBV heeft toegestaan door middel van een licentie. Een dergelijke verbintenis de software vrij te laten gebruiken wordt vanzelfsprekend in de VS uitgevoerd.

2.25 Daarnaast stelt dBV bij Dagvaarding (enkel) nog een tweetal (nakomings)verbintenissen die dmarcian zou (moeten) hebben uitgevoerd:

    i. dBV toegang verschaffen tot het volledige dmarcian SaaS-platform (vgl. § 1.2: *"waarbij dInc haar computersystemen aan dBV ter beschikking stelde (…)"*, § 3.7, § 4.10 c, § 4.18 Dagvaarding); en

    ii. het per e-mail doorsturen van *'leads'* naar dBV (vgl. § 3.7, § 4.12 punt 3: *"haar* [dmarcian] *bijdrage (…) bestond uit het delen van leads (…)"* (toev. adv.), § 4.18, § 4.19 Dagvaarding).

2.26 Deze feitelijke uitvoeringshandelingen zijn uitgevoerd, of hadden moeten worden uitgevoerd, in de VS. dmarcian en haar medewerkers die deze handelingen (moeten) verrichten zijn immers werkzaam in de VS én de servers die deze handelingen verwerken staan ook in de VS.

2.27 Nu de aan de verbintenis tot nakoming ten grondslag liggende uitvoeringshandelingen door dmarcian feitelijk in de VS zijn uitgevoerd of hadden moeten worden uitgevoerd is ook dit de plaats waar de verbintenis die aan de eis ten grondslag ligt is uitgevoerd of moet worden uitgevoerd. Derhalve ontbreekt het de Nederlandse rechter op grond van art. 6 sub a Rv aan rechtsmacht om over de zaak te oordelen.

**C    ART. 7 RV CREËERT OOK GEEN RECHTSMACHT**

2.28 dBV's beroep op art. 7 Rv resulteert evenmin in rechtsmacht over dmarcian. dBV onderbouwt dit beroep (enkel) met de stelling dat *"tussen haar vorderingen jegens dInc en Draegen een zodanige samenhang bestaat, dat redenen van doelmatigheid een gezamenlijke behandeling rechtvaardigen."* (vgl. § 8.6 Dagvaarding).

2.29 In dat verband wordt opgemerkt dat voor het aannemen van rechtsmacht over dmarcian via art. 7 Rv sprake moet zijn van een zelfstandige bevoegdheidsgrond ten aanzien van



de vorderingen tegen Draegen. De bij petitum Dagvaarding door dBV op Draegen gepretendeerde vorderingen zijn:

> "*1. Voor recht te verklaren dat:*
>
> *(...)*
>
> *d. <u>dInc</u> jegens dBV toerekenbaar tekort schiet in de nakoming van haar verplichtingen op grond van de Overeenkomst, dan wel dat zij onrechtmatig handelt, door sinds 22 januari 2021 klanten uit Europa, Afrika en/of Rusland te verwerven, al dan niet door bestaande klanten van dBV te bewegen een overeenkomst met dInc aan te gaan, <u>en dat dInc en Draegen hoofdelijk aansprakelijk zijn voor de schade die dBV als gevolg daarvan heeft geleden en nog lijdt</u>; en*
>
> *e. de eerste, tweede en derde blokkades <u>door dInc</u> van de toegang van dBV en haar medewerkers tot de gezamenlijke computersystemen zoals bedoeld in het lichaam van deze dagvaarding kwalificeren als een tekortkoming in de nakoming van de Overeenkomst dan wel dat zij jegens dBV onrechtmatig zijn, <u>en dat dInc en Draegen hoofdelijk aansprakelijk zijn voor alle schade die dBV als gevolg daarvan heeft geleden en nog lijdt</u>;*
>
> *(...)*
>
> *4. dInc en Draegen te veroordelen om aan dBV de schade die dBV heeft geleden en nog zal lijden als gevolg van het toerekenbaar te kort schieten in de nakoming van de overeenkomst tussen dInc en dBV en het onrechtmatig handelen van dInc en Draegen, zoals hiervoor sub 1 bedoeld, te vergoeden, nader op te maken bij staat en te vereffenen volgens de wet;" (ond. adv.)*

2.30    Vorderingen sub 4, 1d en 1e in samenhang gelezen, leren dat dBV aanvoert dat Draegen hoofdelijk aansprakelijk zou zijn voor dBV's schade, veroorzaakt door de dmarcian verweten gedragingen: het onrechtmatig werven van klanten in dBV's beweerdelijke territorium (vordering sub 1d); en de herhaalde ontzegging van dBV's toegang tot de systemen van dmarcian (vordering sub 1e).

2.31    In strijd met art. 111 lid 2 aanhef sub d Rv heeft dBV evenwel nagelaten bij Dagvaarding de (rechts)gronden voor die door haar gestelde hoofdelijke aansprakelijkheid van Draegen te vermelden.

2.32    De Dagvaarding bevat immers geen enkele aanwijzing voor die aansprakelijkheid van Draegen naast dmarcian, anders dan de herhaalde onjuiste stelling (vgl. § 5.1 en § 5.10 Dagvaarding) dat Draegen onrechtmatig zou hebben gehandeld jegens dBV in zijn hoedanigheid van (voormalig) CEO van dmarcian.

2.33    Waarom dat onrechtmatig handelen van Draegen in zijn hoedanigheid van (voormalig) CEO niet aan dmarcian wordt toegerekend maar in zelfstandige aansprakelijkheid van Draegen zou resulteren wordt niet toegelicht. Integendeel, de summiere toelichting die dBV op de rol van Draegen geeft, duidt juist op toerekening van zijn handelen aan dmarcian (vgl. § 5.10 en § 7.13 Dagvaarding) en pleit dus tegen het aannemen van hoofdelijke aansprakelijkheid.


2.34  *Prima facie* valt niet in te zien op welke grondslag een (voormalig) CEO van een rechtspersoon naar Amerikaans recht hoofdelijk aansprakelijk zou zijn voor gedragingen van die rechtspersoon.

2.35  In zoverre is jegens Draegen sprake van een nietige Dagvaarding (art. 120 lid 1 Rv), zodat ook geen zelfstandige bevoegdheidsgrond bestaat voor Draegen. Te meer nu dBV geen zelfstandig belang heeft bij de berechting van haar vorderingen op Draegen, anders dan dat Draegen uitsluitend via art. 7 Rv als ankergedaagde voor haar vorderingen op dmarcian dient.[8] Derhalve maakt dBV zich schuldig aan misbruik van bevoegdheid als gevolg waarvan dBV niet in haar vorderingen op Draegen kan worden ontvangen.[9]

2.36  Het voorgaande brengt met zich dat bij gebrek aan zelfstandige bevoegdheidsgrond voor Draegen, aan de jegens Draegen gepretendeerde vorderingen niet via de band van art. 7 Rv rechtsmacht kan worden afgeleid voor dmarcian.

## 3    DBV IS NIET-ONTVANKELIJK BIJ GEBREK AAN BELANG

3.1  dBV schiet met het processuele middel, het instellen van de verschillende verklaringen voor recht met als doel nakoming te verkrijgen in de VS, in praktische zin niets op in een procedure bij de rechter in de VS.[10]

3.2  dBV heeft daardoor geen belang in de zin van art. 3:303 BW bij de rechtsvorderingen die zij heeft ingesteld, waardoor zij niet-ontvankelijk is in haar vorderingen. dmarcian licht dat hierna toe.

### A    DBV DIENT EEN NIEUWE ZAAK AANHANGIG TE MAKEN IN DE VS

3.3  Tussen Nederland en de VS bestaat geen verdrag op grond waarvan een vonnis van de rechtbank Rotterdam direct voor erkenning en tenuitvoerlegging in aanmerking komt.

3.4  Indien dBV erkenning en tenuitvoerlegging van een vonnis zou willen verkrijgen in de VS, dient dBV in beginsel haar vorderingen opnieuw ter beoordeling voor te leggen aan de rechter aldaar door een volledig nieuwe zaak aanhangig te maken.

3.5  De rechter in de VS kan op basis van *courtoisie internationale* ("*comity*") in bepaalde gevallen overgaan tot erkenning en tenuitvoerlegging van een vonnis:

> "*Courts in the United States extend comity to foreign judgments if the rendering court has jurisdiction over the case and the parties, and if recognition would not violate the laws and public policies of the forum state (in this case, North Carolina).*".[11] Een kopie van een affidavit van dmarcian's advocaat in de VS van 12 april 2022 wordt overgelegd als **Productie 1**.

---

[8]  Vgl. HvJ EU 21 mei 2015, C-352/13, ECLI:EU:C:2015:335, *JBPR* 2016/15 m.nt. R.B. van Hees (*CDC/Akzo c.s.*), r.o. 27; Hof Amsterdam 16 februari 2021, ECLI:NL:GHAMS:2021:508; en Concl. A-G R.H. de Bock, ECLI:NL:PHR:2020:95, § 4.79, bij HR 12 juni 2020, ECLI:NL:HR:2020:1037.

[9]  Vgl. E.J.H. Schrage, 'Un droit porté trop loin devient une injustice - Misbruik van bevoegdheid uit historisch en comparatief perspectief', *VrA* 2007/1, p. 44.

[10]  A.S. Rueb, E. Gras, R.G. Hendrikse & A.W. Jongbloed, *Compendium van het Burgerlijk procesrecht*, Deventer: Wolters Kluwer 2021, p. 11-12.

[11]  Productie 1, § 9.



3.6 De rechter in de VS zal in onderhavig geval niet tot erkenning en tenuitvoerlegging op grond van *comity* overgaan, aangezien de USDC al expliciet heeft overwogen dat de Nederlandse rechter geen rechtsmacht heeft over onderhavig geschil.[12]

3.7 dBV dient derhalve een volledig nieuwe zaak aanhangig te maken in de VS.

**B    DE RECOGNITION ACT IS NIET VAN TOEPASSING**

3.8 Dit is slechts anders indien de voor het onderhavige geval relevante *North Carolina Uniform Foreign-Country Money Judgments Recognition Act* (**Recognition Act**) erkenning toelaat op basis van *courtoisie internationale*, indien sprake is van een buitenlands vonnis waarin een partij is veroordeeld tot het betalen van een geldsom en dit vonnis uitvoerbaar bij voorraad is verklaard (*final, conclusive, and enforceable*). Alsdan kan de rechter in de VS verlof tot tenuitvoerlegging van dat vonnis verlenen via een exequaturprocedure (NC Gen Stat § 1C-1852, sub a (2021) *Recognition Act*).[13]

3.9 De rechter in de VS weigert erkenning en een verlof tot tenuitvoerlegging overigens steeds indien het vonnis is gewezen door een onbevoegde rechter (NC Gen Stat § 1C-1853, sub b (2021) *Recognition Act*, vgl. Onderdeel 3 A, § 3.6.[14]

3.10 Voor zover de rechter in de VS door dBV zou kunnen worden overtuigd dat de Nederlandse rechter wel bevoegd zou zijn (geweest), leidt dat ook niet tot een ander resultaat.

3.11 dBV vordert immers enkel verklaringen voor recht én vordert – los van de dwangsommen, waarover hierna meer – géén geldsommen. dBV kan derhalve geen exequaturprocedure starten onder de *Recognition Act*, waardoor dBV geen belang heeft bij onderhavige procedure voor de rechtbank Rotterdam.[15]

3.12 dmarcian licht hierna toe dat ook de dwangsommenvorderingen van dBV niet tot een ander resultaat leiden.

3.13 dBV stelt allereerst, overigens ongefundeerd, dat de rechter in de VS zou willen weten of en hoeveel dwangsommen zouden zijn verbeurd op grond van Nederlands recht, en stelt daarbij (impliciet) dat er een vonnis van de rechter in Nederland, *de facto* de rechtbank Rotterdam, daarvoor vereist zou zijn (vgl. § 7.1 Dagvaarding).

3.14 Die (impliciete) stellingen van dBV zijn onjuist. De rechter in de VS kan immers ook rechtspreken op basis van Nederlands recht en daarvoor zelfstandig – indien gewenst – een deskundigenbericht opvragen. Een vonnis van de Nederlandse rechter is niet vereist. dBV heeft derhalve geen belang bij onderhavige procedure bij de rechtbank Rotterdam.

---

[12] Vgl. productie 41 Dagvaarding, p. 32 – 39.
[13] Productie 1, § 10 - § 12.
[14] Vgl. productie 41 Dagvaarding, p. 32 – 39; en T. Claassens, 'Welwillende uitvoering van Nederlandse civiele vonnissen in de VS', *Advocatenblad* 2003/12, p. 521.
[15] Productie 1, § 19.



3.15  De rechter in de VS kan bovendien geen verlof tot tenuitvoerlegging verlenen op grond van de *Recognition Act*, indien de beslissing van de buitenlandse rechter ziet op een *"fine or other penalty"* (ex NC Gen Stat § 1C-1852, sub b (2021) *Recognition Act*). Dwangsommen worden door de rechter in de VS onmiskenbaar gezien als een *"penalty"*.[16]

3.16  Daardoor dient dBV voor voldoening in de VS van de beweerdelijk verbeurde dwangsommen opnieuw een volledig nieuwe zaak aanhangig te maken en de vordering tot voldoening van de beweerdelijk verbeurde dwangsommen ter beoordeling voor te leggen aan de rechter in de VS. Een vonnis van de Nederlandse rechter heeft in dat opzicht dus ook geen betekenis voor de rechter in de VS. Ook daarom heeft dBV geen belang bij de onderhavige procedure bij de rechtbank Rotterdam.

3.17  dmarcian concludeert dan ook dat dBV geen belang heeft bij onderhavige procedure bij de rechtbank Rotterdam omdat:

   a.  dBV opnieuw een volledig nieuwe zaak aanhangig dient te maken in de VS, indien zij nakoming in de VS wil verkrijgen, bij gebrek aan een verdrag inzake erkenning en tenuitvoerlegging tussen Nederland en de VS; en

   b.  de *Recognition Act*, die een exequaturprocedure mogelijk zou kunnen maken, niet van toepassing is nu: (i) niet aan het reciprociteitsvereiste is voldaan, waardoor de rechter in de VS geen exequatur verleent; (ii) voor zover de rechter in de VS van het reciprociteitsvereiste zou afzien, dBV géén geldvorderingen heeft ingesteld; en (iii) verbeurde dwangsommen weliswaar kwalificeren als geldsommen, maar expliciet zijn uitgezonderd en daardoor niet vallen onder de reikwijdte van de *Recognition Act*.

3.18  dBV schiet dus niets op met een vonnis van de rechtbank Rotterdam en dient derhalve niet-ontvankelijk te worden verklaard in haar vorderingen.

## 4    DE RECHTBANK DIENT ZAAK AAN TE HOUDEN

4.1  Voor zover de rechtbank Rotterdam bevoegdheid aanneemt én dBV ontvangt in haar vorderingen, wijst dmarcian op het volgende.

4.2  Het geschil tussen dmarcian en dBV, dat dBV op 19 januari 2022 aan uw rechtbank voorlegde, is begin 2021 al door dmarcian aan de bevoegde (bodem)rechter: de *United States District Court for the Western District of North Carolina* (**USDC**) voorgelegd.[17]

4.3  Kort gezegd heeft dmarcian daar een bodemprocedure aanhangig gemaakt, waarbij zij *preliminary injunctions* (te vergelijken met provisionele vorderingen in een Nederlandse

---

[16]  Productie 1, § 8; en § 14 - § 18.
[17]  Productie 1, § 3 - § 5.



procedure ex art. 223 Rv) heeft ingesteld en op 26 mei 2021 toegewezen heeft gekregen (vgl. productie 41 Dagvaarding).[18]

4.4 Tegenstrijdige beslissingen dreigen bij parallelle procedures. In onderhavig geval is er niet alleen sprake van een dreiging van tegenstrijdige beslissingen, maar hebben die tegenstrijdige beslissingen zich al voorgedaan.

4.5 De voorzieningenrechter van de rechtbank Rotterdam heeft namelijk op 31 mei 2021 vonnis gewezen en verschillende voorzieningen getroffen (vgl. productie 37 Dagvaarding).

4.6 Opmerkelijk detail is dat dmarcian op 28 mei 2021 dBV heeft verzocht het vonnis van de USDC te mogen delen met de voorzieningenrechter van de rechtbank Rotterdam. dBV heeft echter op diezelfde dag geweigerd het voor dBV ongunstige vonnis van de USDC te delen met de voorzieningenrechter van de rechtbank Rotterdam. Het is redelijkerwijs aannemelijk dat de voorzieningenrechter, indien zij volledig ingelicht zou zijn door dBV zoals verzocht door dmarcian, een ander vonnis zou hebben gewezen. Thans loopt er een hoger beroep bij het gerechtshof Den Haag.[19] Een kopie van het verzoek van dmarcian aan dBV van 28 mei 2021 wordt overgelegd als **Productie 2**.

4.7 Het vonnis van de bevoegde (bodemrechter) USDC en het vonnis van de voorzieningenrechter van de rechtbank Rotterdam bevatten onverenigbare beslissingen, hetgeen door dBV niet wordt betwist.

4.8 dmarcian licht hierna toe dat en waarom uw rechtbank de coördinatieregeling ex art. 12 Rv dient toe te passen en als gevolg daarvan de onderhavige zaak dient aan te houden.[20]

**A    AANHOUDING VEREIST GELET OP LITISPENDENTIE**

4.9 Indien gelijktijdig voor verschillende rechters tussen dezelfde partijen vorderingen aanhangig zijn, die hetzelfde onderwerp betreffen en op dezelfde oorzaak berusten houdt de laatst geadieerde rechter de zaak (ambtshalve) aan, totdat de bevoegdheid van de eerst geadieerde rechter vaststaat (ex art. 12 Rv).

4.10 dmarcian heeft begin 2021 zes *"federal law claims"* en negen *"state law claims"* voorgelegd aan de USDC.[21] Kort gezegd houden de *"federal law claims"* schendingen van

---

[18] Productie 1, § 5.
[19] Onder zaaknummer 200.296.959/01.
[20] L. Strikwerda & S.J. Schaafsma, *Inleiding tot het Nederlandse internationaal privaatrecht*, Deventer: Wolters Kluwer 2019, p. 104; L. Strikwerda & P. Vlas, *De overeenkomst in het IPR* (Praktijkreeks IPR deel 11), Apeldoorn-Antwerpen: Maklu 2015, p. 51.
[21] Productie 1, § 3.



het intellectuele eigendomsrecht van dmarcian in.[22] De "*state law claims*" houden kort gezegd schendingen van de samenwerking tussen dmarcian en dBV in.[23]

4.11 dBV heeft bij dagvaarding gedateerd op 11 oktober 2021 verschillende vorderingen ingesteld, die kort gezegd betrekking hebben op: (i) de samenwerking tussen dmarcian en dBV; en (ii) het intellectuele eigendomsrecht van dmarcian (waar dBV (onterecht) aanspraak op maakt).

4.12 De vorderingen ingesteld door dmarcian en ook de vorderingen ingesteld door dBV betreffen dus: (i) hetzelfde onderwerp, namelijk de (uitleg van de) samenwerking tussen dmarcian en dBV en de daarvoor gebruikte intellectuele eigendommen; en (ii) berusten op dezelfde oorzaak, namelijk de gedragingen van dBV waardoor dmarcian genoodzaakt was de samenwerking met dBV te beëindigen.

4.13 Art. 12 Rv stelt voorts kort gezegd als voorwaarde dat de in de Amerikaanse procedure een beslissing kan worden gegeven die in Nederland voor erkenning en, in voorkomend geval, voor tenuitvoerlegging vatbaar is.

4.14 Tussen Nederland en de VS bestaat geen verdrag op grond waarvan een vonnis van de USDC direct voor erkenning en tenuitvoerlegging in Nederland in aanmerking komt. dmarcian zal zich in zo een geval, wanneer noodzakelijk, beroepen op art. 431 lid 2 Rv.

4.15 De procedure op grond van art. 431 lid 2 Rv kan op twee manieren worden ingestoken. Ten eerste kan er een volledig nieuwe inhoudelijke behandeling van het geschil worden gevraagd van de Nederlandse rechter. Daarbij beoordeelt de Nederlandse rechter het geding zelfstandig, los van het oordeel van de buitenlandse rechter. Ten tweede kan worden gekozen voor een zogenaamde 'verkapte exequaturprocedure', waarbij wordt getoetst aan de in de jurisprudentie ontwikkelde criteria (de Gazprombank-criteria: HR 26 september 2014, ECLI:NL:HR:2014:2838, r.o. 3.6.4 (*Gazprombank*), vgl. ook Rb. Den Haag 28 oktober 2020, ECLI:NL:RBDHA:2020:10953, r.o. 6.2 – 6.3).

4.16 dmarcian heeft geen reden aan te nemen dat de vonnissen van de USDC niet voldoen aan de Gazprombank-criteria, integendeel. Daarmee is voldaan aan de vereisten van art. 12 Rv.

4.17 De USDC kwalificeert aangaande het onderhavige geschil als eerst geadieerde bodemrechter, waardoor de rechtbank Rotterdam de zaak in elk geval dient aan te houden (ex art. 12 Rv). Daarna dient de rechtbank Rotterdam zich onbevoegd te

---

[22] Productie 1, § 3: "*copyright infringement; trademark infringement under the Lanham Act; false designation under the Lanham Act; violation of the Defend Trade Secrets Act; common law trademark infringement; and violation of the Anti-Cybersquatting Consumer Protection Act.*".
[23] Productie 1, § 3: "*breach of written contract; breach of oral contract; defamation; misappropriation of trade secrets; computer trespass; tortious interference with contract; tortious interference with prospective economic advantage, unjust enrichment (as an alternative to breach of contract); and unfair or deceptive business practices.*".



verklaren, indien de procedure bij de USDC is afgerond en de beslissing van de USDC voor erkenning en tenuitvoerlegging in Nederland vatbaar blijkt te zijn.

4.18 Ten overvloede wijst dmarcian op het volgende. De USDC heeft zich uitdrukkelijk bevoegd verklaard om zich over het geschil tussen dmarcian en dBV te buigen. Voorts heeft de USDC expliciet de bevoegdheid van de Nederlandse rechter afgewezen.[24]

**B     AANHOUDING VEREIST GELET OP CONNEXITEIT**

4.19 Voor zover de rechtbank Rotterdam overweegt dat in onderhavig geval geen sprake zou zijn van litispendentie, is op basis van de eisen van de goede procesorde naar analogie van de EEX II-Vo sprake van connexiteit tussen de vorderingen die door dmarcian zijn voorgelegd aan de USDC en de vorderingen die door dBV zijn voorgelegd aan de rechtbank Rotterdam.

4.20 Ontegenzeggelijk bestaat er een nauwe band tussen de hiervoor genoemde vorderingen (Onderdeel 4 A, § 4.10 - § 4.12) dat een goede rechtsbedeling vraagt om gelijktijdige behandeling en berechting, teneinde te voorkomen dat bij afzonderlijke berechting onverenigbare uitspaken worden gegeven (op basis van de eisen van een goede procesorde naar analogie van art. 30 lid 1 en lid 3 EEX-II Vo jo. art. 34 lid 1 sub a EEX II-Vo).

4.21 Het vereiste dat gevaar bestaat van uitspraken die tegenstrijdige feitelijke of rechtsoordelen inhouden is een gegeven, gelet op de vonnissen van de bevoegde (bodemrechter) USDC en de vonnissen van de voorzieningenrechter in Nederland (vgl. Onderdeel 4, § 4.4 - § 4.7). Aan het andere vereiste dat beide zaken in eerste aanleg aanhangig zijn, is voldaan. Immers, de zaak die is voorgelegd aan de USDC loopt nog.

4.22 Kort en goed, ook indien enkel sprake zou zijn van connexiteit tussen de parallelle procedures bij de USDC en de rechtbank Rotterdam, dient de rechtbank Rotterdam onderhavige zaak op basis van de eisen van de goede procesorde aan te houden.

4.23 dmarcian concludeert dan ook dat de coördinatieregeling om meerdere redenen, zijnde litispendentie dan wel connexiteit, vereist dat de rechtbank Rotterdam onderhavige zaak aanhoudt.

---

[24]  Vgl. productie 41 Dagvaarding, p. 32 – 39.



**MET CONCLUSIE**

dat de rechtbank Rotterdam, bij vonnis, voor zover mogelijk uitvoerbaar bij voorraad:

1.  zich onbevoegd verklaart om van de bij de Dagvaarding ingestelde vorderingen kennis te nemen; althans,

2.  dBV niet-ontvankelijk verklaart in de bij de Dagvaarding ingestelde vorderingen; althans,

3.  de behandeling van deze procedure aanhoudt, totdat de rechter in de VS een eindbeslissing heeft gewezen; en

dBV veroordeelt in de kosten van het incident, te vermeerderen met de nakosten van EUR 163 zonder betekening, dan wel EUR 255 in geval van betekening, te voldoen binnen veertien dagen na het wijzen van het vonnis, onder bepaling dat indien voldoening niet binnen genoemde termijn plaatsvindt, hierover wettelijke rente is verschuldigd te rekenen vanaf veertien dagen na dagtekening van het vonnis.

Advocaat

MR. HOEBA

---

Deze zaak wordt behandeld door mrs. T.S. Jansen, M.C. Hoeba en J. van Hemel van Lexence N.V., Amstelveenseweg 500 te (1081 KL) Amsterdam, tel.: 020 5736 812, fax: 020 5736 884, e-mail: t.jansen@lexence.com / m.hoeba@lexence.com / j.van.hemel@lexence.com.

PRODUCTIE 1

# AFFIDAVIT OF PAMELA S. DUFFY

NOW COMES the undersigned affiant and hereby deposes and says as follows:

1. My name is Pamela S. Duffy. I reside in North Carolina, am a member of the North Carolina bar, and have practiced civil litigation in North Carolina for over thirty years. I am admitted to practice before each of the federal courts in North Carolina and also before the Fourth Circuit Court of Appeals and the United States Supreme Court. I presently practice at the law firm of Sharpless McClearn Lester Duffy, P.A. where I am a shareholder.

2. Along with my colleague David A. Dorey, Esquire of Blank Rome, LLP, a member of the Delaware bar, I represent dmarcian, Inc. in proceedings pending in the United States District Court for the Western District of North Carolina encaptioned *dmarcian, Inc. v. dmarcian Europe, BV*, case # 1:21-CV-00067 ("the North Carolina Litigation").

3. We commenced the North Carolina Litigation against dmarcian Europe BV ("dBV") with the filing of a complaint asserting numerous claims on the merits seeking damages arising out of the parties' contract, dmarcian's intellectual property rights, and various tort claims. Dmarcian's complaint includes fifteen counts comprised of six (6) federal claims and nine (9) state law claims. The federal law claims include: copyright infringement; trademark infringement under the Lanham Act; false designation under the

1

Lanham Act; violation of the Defend Trade Secrets Act; common law trademark infringement; and violation of the Anti-Cybersquatting Consumer Protection Act. The state law claims include: breach of written contract; breach of oral contract; defamation; misappropriation of trade secrets; computer trespass; tortious interference with contract; tortious interference with prospective economic advantage, unjust enrichment (as an alternative to breach of contract); and unfair or deceptive business practices. These claims all remain pending.

4. The crux of the complaint is that dBV hijacked dmarcian's business as part of its efforts to separate European operations from dmarcian's operations, and began infringing on dmarcian's trademarks, copyright, and trade secrets by using this intellectual property outside the parties' contract of cooperation. The complaint requests damages as well as injunctive relief enjoining dBV from, among other things, using the dmarcian, Inc's source code and trademarks.

5. We also sought protection by way of preliminary and permanent injunctive relief for dmarcian's intellectual property rights, among others. After considering fully briefed objections of dBV and after extensive argument, the District Court determined it had jurisdiction over dBV to support a preliminary injunction, and granted that preliminary injunction, finding that dmarcian had shown both a likelihood of success on the merits

on its copyright, trademark and trade secrets claims and also that dmarcian met its burden to show irreparable harm if the relief was not granted. dBV has appealed that ruling and the matter has been fully briefed. The parties are awaiting notice of oral argument.

6.    Pending appeal, in a recent scheduling hearing, the District Court has encouraged the parties to engage in voluntary discovery and mediation pending the appeal. As expressed to the Court during that hearing, dmarcian desires voluntary discovery and an exchange of information to facilitate mediation. Indeed, the Court encouraged the parties to agree on that exchange while the appeal is pending.

7.    Under our Court's rules, the parties are entitled to request and receive documents and electronic information from each other, including, for example, sensitive financial, computer code, and other information which can be produced to the other side/requesting party under an order of confidentiality. We await word on dBV's position on our requests.

8.    I am aware that the preliminary relief judge of the Rotterdam court has issued various orders against dmarcian, Inc., on the basis of which dBV claims that dmarcian, Inc. forfeited penalties. Although dmarcian, Inc disputes that it has forfeited penalties, I have evaluated the enforceability of those penalties and based on applicable law, in my opinion penalties are in any event not enforceable against dmarcian, Inc. in North Carolina.

9.    Principles of comity apply to whether courts in North Carolina will recognize a foreign judgment.  Comity is defined as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protections of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139 (1895).[1]  Courts in the United States extend comity to foreign judgments if the rendering court has jurisdiction over the case and the parties, and if recognition would not violate the laws and public policies of the forum state (in this case, North Carolina). *See Clarkson Co. v. Shaheen*, 555 F.2d 624, 629 (2d Cir. 1976).

10.    North Carolina's Uniform Foreign-Country Money Judgments Recognition Act (hereafter, the "Recognition Act") is a codification of the principles of comity and governs whether a foreign-country judgment may be recognized under North Carolina law. *See VF Jeanswear Ltd. P'ship v. Molina*, 320 F. Supp. 2d 412, 417 (M.D.N.C. 2004) (holding that the Recognition Act is essentially a codification of the doctrine of comity).

---

[1] *Hilton,* decided by the U.S. Supreme Court over 100 years ago, remains the seminal case on the doctrine of comity.

11.     A party seeking recognition of a foreign-country judgment has the burden of establishing that the Recognition Act statute applies to the judgment. N.C. Gen. Stat. § 1C-1852(c).

12.     The Recognition Act allows a foreign-country judgment to be recognized to the extent that the judgment: (1) grants or denies recovery of a sum of money; and (2) under the law of the foreign country, where rendered, is final, conclusive, and enforceable. N.C. Gen. Stat. § 1C-1852(a).

13.     A final judgment under the Recognition Act is one that "means the final decision of the court resolving the dispute and determining the rights and obligations of the parties, and the law's last word in a judicial controversy." *Savage v. Zelent,* 243 N.C. App. 535, 540, 777 S.E.2d 801, 806 (2015).

14.     Further, the Recognition Act does ***not*** apply to a foreign-country judgment to the extent that the judgment is a fine or other penalty. N.C. Gen. Stat. § 1C-1852(b)(2).

15.     Case law interpreting the principles of comity also reflect that penalties issued by a foreign country are not subject to enforcement in the United States. *See, e.g. Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1219 (9th Cir. 2006) *(citing,* Restatement § 483; see also 30 Am.Jur.2d Execution and Enforcement of Judgments § 846

(2004) ("Courts in the United States will not recognize or enforce a penal judgment rendered in another nation.").

16.    To the extent that dBV seeks to enforce a Dutch injunction in the United States, it would have to establish the enforceability of the injunction under comity principles and further would have to relitigate the issue of penalties.

17.    For the foregoing reasons, in my opinion any penalties issued in the preliminary relief proceedings would not constitute a final judgment and, in any event, are not subject to recognition because they are penalties.

18.    To the extent dmarcian Europe BV seeks penalties in the proceedings on the merits filed against dmarcian, Inc. in January of 2021, any final judgment awarding penalties also would not be recognized under N.C. Gen. Stat. Λ1C-1852(b)(2).

**19.**    To the extent that dmarcian Europe BV seeks declaratory relief in the Dutch proceedings, that would also fall outside the Recognition Act because the Recognition Act does not apply to anything other than money judgments. *See* Official Comment to N.C. Gen. Stat. § 1C-1852(a)(1). Rather, the Courts would apply principles of comity to determine enforceability.

20.    Any determinations made in the Enterprise Court proceedings are also not entitled to recognition under the Recognition Act, both because dmarcian, Inc. was not a party to those proceedings and because the

investigator's determinations are not those of an adjudicative body. N.C. Gen. Stat. § 1C-1851(2) and Official Comment 3.

21.     It is also my opinion that a determination made in the Dutch Courts as to the respective trademark rights of parties are "irrelevant and inadmissible" in United States court hearing Lanham Act claims. *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956).

22.     As to the copyright claim, the United States District Court found that the copyright at issue is a United States Copyright and that US law can apply even where the infringement takes place abroad. (5/26/21 Injunction, p. 38, n. 15). The Court further found that US law applies because the law of the licensor applies. *Id.*

23.     Further the affiant sayeth not.

This the *12ᵗʰ* day of ___*April*___, 2022.

_____
Pamela S. Duffy
Affiant

Sworn to and subscribed before me this

the _*12ᵗʰ*_ day of __*April*__, 20*22*

___*Jennifer Hitney*___
Notary Public

My Commission Expires: *04/22/2025*

JENNIFER HITNEY
Notary Public, North Carolina
Guilford County
My Commission Expires
April 22, 2025

7

PRODUCTIE 2

# Mukesh Hoeba

| | |
|---|---|
| **Van:** | Timo Jansen <t.jansen@lexence.com> |
| **Verzonden:** | vrijdag 28 mei 2021 12:01 |
| **Aan:** | 'Alfred Meijboom' |
| **CC:** | Veerle van Druenen; Paul Josephus Jitta \| Buren NV; Friederike Henke \| Buren NV; Jeroen van Hemel; Hub. Harmeling |
| **Onderwerp:** | RE: Injunction [LEXENCE-L.FID641175] |

Helder. Dus de door de Ondernemingskamer benoemde bestuurder van DME wil de Rotterdamse
voorzieningenrechter een voor haar beoordeling van de rechtsverhouding tussen partijen evident
relevante beslissing onthouden.


T.S. (Timo) Jansen
advocaat, partner

Lexence N.V. advocaten & notarissen
T: +31 20 5736 812
M: +31 65 1335 998
F: +31 20 5736 884
E: t.jansen@lexence.com

Amstelveenseweg 500, 1081 KL Amsterdam    T: +31 (0)20 5736 736 - F: +31 (0)20 5736 737    KvK: 34191068 - btw: NL 8120.01.217.B01
Postbus 75999, 1070 AZ Amsterdam, Nederland   E: info@lexence.com - W: www.lexence.com    Member of Meritas Law Firms Worldwide

Op alle dienstverlening door of namens Lexence N.V. zijn exclusief van toepassing de algemene voorwaarden van Lexence N.V., gedeponeerd bij het
handelsregister te Amsterdam onder nummer 34191068. De algemene voorwaarden bevatten een aansprakelijkheidsbeperking, worden op verzoek
verstrekt en zijn te vinden op www.lexence.com. Alle opdrachten worden, met terzijdestelling van artikelen 7:404, 7:407 lid 2 en 7:409 BW, uitsluitend
aanvaard en uitgevoerd door Lexence N.V.

All services by or on behalf of Lexence N.V. are exclusively governed by the general terms and conditions deposited with the trade register in The
Netherlands under number 34191068. The general terms and conditions contain a limitation of liability. The general terms and conditions will be sent
on request and are to be found on www.lexence.com. Under exclusion of Sections 404, 407(2) and 409 of Book 7 of the Dutch Civil Code, all
assignments will be exclusively accepted and performed by Lexence N.V.

**Van:** Alfred Meijboom <Alfred.Meijboom@kvdl.com>
**Verzonden:** vrijdag 28 mei 2021 11:56
**Aan:** Timo Jansen <t.jansen@lexence.com>
**CC:** Veerle van Druenen <Veerle.van.Druenen@kvdl.com>; Paul Josephus Jitta \| Buren NV
<p.josephusjitta@burenlegal.com>; Friederike Henke \| Buren NV <f.henke@burenlegal.com>; Jeroen van Hemel
<j.van.hemel@lexence.com>; Hub. Harmeling <hub.j@icloud.com>
**Onderwerp:** Re: Injunction [LEXENCE-L.FID641175]

Geachte confrère:
Mijn reactie is conform de instructie van cliënte.


Met vriendelijke groet/ best regards,
Alfred Meijboom
advocaat / attorney at law


Kennedy Van der Laan N.V.
Molenwerf 16, 1014 BG Amsterdam
Postbus 58188, 1040 HD Amsterdam
t. +31 20 5506 633, m. +31 6 53 188 187


Sent by mobile device

Op 28 mei 2021 om 11:27 heeft Timo Jansen <t.jansen@lexence.com> het volgende geschreven:


Geachte confrère,

Dat stukken zonder uw toestemming niet in het geding kunnen worden gebracht is mij
bekend. Maar waarom geeft DME geen toestemming? Het is toch in het belang van alle
partijen dat de rechter de feiten volledig kent?

Verneem graag.

Met vriendelijke groet,

T.S. (Timo) Jansen
advocaat, partner

Lexence N.V. advocaten & notarissen
T: +31 20 5736 812
M: +31 65 1335 998
F: +31 20 5736 884
E: t.jansen@lexence.com

Amstelveenseweg 500, 1081 KL Amsterdam     T: +31 (0)20 5736 736 - F: +31 (0)20 5736 737     KvK: 34191068 - btw: NL 8120.01.217.B01
Postbus 75999, 1070 AZ Amsterdam, Nederland  E: info@lexence.com - W: www.lexence.com     Member of Meritas Law Firms Worldwide

Op alle dienstverlening door of namens Lexence N.V. zijn exclusief van toepassing de algemene voorwaarden van Lexence N.V., gedeponeerd bij het
handelsregister te Amsterdam onder nummer 34191068. De algemene voorwaarden bevatten een aansprakelijkheidsbeperking, worden op verzoek
verstrekt en zijn te vinden op www.lexence.com. Alle opdrachten worden, met terzijdestelling van artikelen 7:404, 7:407 lid 2 en 7:409 BW, uitsluitend
aanvaard en uitgevoerd door Lexence N.V.

All services by or on behalf of Lexence N.V. are exclusively governed by the general terms and conditions deposited with the trade register in The
Netherlands under number 34191068. The general terms and conditions contain a limitation of liability. The general terms and conditions will be sent
on request and are to be found on www.lexence.com. Under exclusion of Sections 404, 407(2) and 409 of Book 7 of the Dutch Civil Code, all
assignments will be exclusively accepted and performed by Lexence N.V.

**Van:** Alfred Meijboom <Alfred.Meijboom@kvdl.com>
**Verzonden:** vrijdag 28 mei 2021 10:39
**Aan:** Timo Jansen <t.jansen@lexence.com>; Veerle van Druenen <Veerle.van.Druenen@kvdl.com>;
'Paul Josephus Jitta | Buren NV' <p.josephusjitta@burenlegal.com>; Friederike Henke | Buren NV
<f.henke@burenlegal.com>
**CC:** Jeroen van Hemel <j.van.hemel@lexence.com>; Hub. Harmeling <hub.j@icloud.com>
**Onderwerp:** RE: Injunction [LEXENCE-L.FID641175]

Geachte confrère:
Hierdoor bericht ik u dat dmarcian Europe BV géén toestemming verleent voor het nasturen
van de order aan de voorzieningenrechter. Het debat is inmiddels gesloten en er kunnen op
grond van art. 6.2 van het procesreglement kort geding geen stukken meer worden
ingediend.

Met vriendelijke groet/ best regards,

**Alfred Meijboom**
Advocaat / Attorney-at-law

**Kennedy Van der Laan**
T +31205506633  M +31653188187
F +31205506733
Amsterdam
www.kvdl.com
LinkedIn | Instagram | Nieuwsbrief


**Van:** Timo Jansen <t.jansen@lexence.com>
**Verzonden:** vrijdag 28 mei 2021 09:59

**Aan:** Alfred Meijboom <Alfred.Meijboom@kvdl.com>; Veerle van Druenen <Veerle.van.Druenen@kvdl.com>; 'Paul Josephus Jitta | Buren NV' <p.josephusjitta@burenlegal.com>; Friederike Henke | Buren NV <f.henke@burenlegal.com>
**CC:** Jeroen van Hemel <j.van.hemel@lexence.com>
**Onderwerp:** Injunction [LEXENCE-L.FID641175]
**Urgentie:** Hoog

Geachte collega's, geachte confrères,

Ondertussen is bijgaande *order and preliminary injunction* gewezen in de Amerikaanse procedure. Dmarcian meent dat kennisname door de voorzieningenrechter van dit document aangewezen is, opdat zij de feiten aangaande de rechtsverhouding tussen partijen volledig kent (art. 21 Rv).

Ik vertrouw erop dat u dat met mij eens bent maar verneem graag uw schriftelijke instemming.

Bij voorbaat dank en met vriendelijke groet,

T.S. (Timo) Jansen
advocaat, partner

Lexence N.V. advocaten & notarissen
T: +31 20 5736 812
M: +31 65 1335 998
F: +31 20 5736 884
E: t.jansen@lexence.com

Amstelveenseweg 500, 1081 KL Amsterdam    T: +31 (0)20 5736 736 - F: +31 (0)20 5736 737    KvK: 34191068 - btw: NL 8120.01.217.B01
Postbus 75999, 1070 AZ Amsterdam, Nederland    E: info@lexence.com - W: www.lexence.com    Member of Meritas Law Firms Worldwide

Op alle dienstverlening door of namens Lexence N.V. zijn exclusief van toepassing de algemene voorwaarden van Lexence N.V., gedeponeerd bij het handelsregister te Amsterdam onder nummer 34191068. De algemene voorwaarden bevatten een aansprakelijkheidsbeperking, worden op verzoek verstrekt en zijn te vinden op www.lexence.com. Alle opdrachten worden, met terzijdestelling van artikelen 7:404, 7:407 lid 2 en 7:409 BW, uitsluitend aanvaard en uitgevoerd door Lexence N.V.

All services by or on behalf of Lexence N.V. are exclusively governed by the general terms and conditions deposited with the trade register in The Netherlands under number 34191068. The general terms and conditions contain a limitation of liability. The general terms and conditions will be sent on request and are to be found on www.lexence.com. Under exclusion of Sections 404, 407(2) and 409 of Book 7 of the Dutch Civil Code, all assignments will be exclusively accepted and performed by Lexence N.V.

Deze e-mail bevat vertrouwelijke informatie en mag uitsluitend worden gebruikt door de geadresseerde of andere personen binnen de organisatie van de geadresseerde die bevoegd zijn om kennis te nemen van de informatie die deze e-mail bevat. Alle diensten worden verricht door Kennedy Van der Laan N.V. op basis van onze algemene voorwaarden die u kunt raadplegen, uitprinten en downloaden op www.kvdl.com. Deze algemene voorwaarden bevatten een beperking van aansprakelijkheid. Kennedy Van der Laan N.V. is in het Handelsregister ingeschreven onder nummer 34261155.

This e-mail contains privileged information and may be used only by the addressee or other persons within the addressee's organization authorized to access the information contained herein. All services are provided by Kennedy Van der Laan N.V. on the basis of our general terms and conditions which can be accessed, printed and downloaded at www.kvdl.com. These general terms and conditions contain a limitation of liability. Kennedy Van der Laan N.V. is registered in the Company Register under number 34261155.

Deze e-mail bevat vertrouwelijke informatie en mag uitsluitend worden gebruikt door de geadresseerde of andere personen binnen de organisatie van de geadresseerde die bevoegd zijn om kennis te nemen van de informatie die deze e-mail bevat. Alle diensten worden verricht door Kennedy Van der Laan N.V. op basis van onze algemene voorwaarden die u kunt raadplegen, uitprinten en downloaden op www.kvdl.com. Deze algemene voorwaarden bevatten een beperking van aansprakelijkheid. Kennedy Van der Laan N.V. is in het Handelsregister ingeschreven onder nummer 34261155.

This e-mail contains privileged information and may be used only by the addressee or other persons within the addressee's organization authorized to access the information contained herein. All services are provided by Kennedy Van der Laan N.V. on the basis of our general terms and conditions which can be accessed, printed and downloaded at www.kvdl.com. These general

terms and conditions contain a limitation of liability. Kennedy Van der Laan N.V. is registered in the Company Register under number 34261155.